# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RICHARD SATTERFIELD,

    Petitioner,

vs.

GREGORY COX, *et al.*,

    Respondents.

Case No. 2:13-cv-00424-GMN-GWF

**ORDER**

    This is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner. This matter comes before the Court on the merits of the remaining grounds of the second amended petition.

**I. Procedural History**

    On September 11, 2007, in the Eighth Judicial District for the State of Nevada, petitioner was convicted, pursuant to a jury trial, of first degree murder with the use of a deadly weapon. (Exhibit 36).[1] Petitioner was sentenced to two consecutive terms of 20 years to life in the Nevada Department of Corrections. (*Id.*). Petitioner filed a direct appeal. (Exhibit 37). Petitioner's opening brief on appeal was filed on July 17, 2008. (Exhibit 52). On May 5, 2009, the Nevada Supreme Court affirmed petitioner's convictions. (Exhibit 56).

---

[1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 14-18.

Petitioner filed a post-judgment habeas petition in state district court on September 24, 2009. (Exhibit 62). With the assistance of counsel, petitioner filed a supplemental brief in support of the post-judgment habeas petition. (Exhibit 74). The state district court held two evidentiary hearings on June 20, 2011, and July 25, 2011. (Exhibits 78 & 81). On August 30, 2011, the state district court entered written findings of fact, conclusion of law, and order denying the petition. (Exhibit 84). Petitioner appealed the denial of his petition. (Exhibit 87). On May 8, 2012, petitioner's opening brief on appeal was filed. (Exhibit 99). On February 13, 2013, the Nevada Supreme Court affirmed the denial of the post-judgment habeas petition. (Exhibit 109). Remittitur issued on March 13, 2013. (Exhibit 111).

Petitioner mailed his federal petition to this Court on March 9, 2013. (ECF No. 1, at p. 1). A first amended petition was filed on May 2, 2013. (ECF No. 6). A second amended petition was filed on May 30, 2013. (ECF No. 8). In the second amended petition, petitioner raises five claims for relief. (ECF No. 8, at pp. 3-20). Respondents filed a motion to dismiss the second amended petition. (ECF No. 13). On July 3, 2014, this Court entered an order granting in part and denying in part respondents' motion to dismiss. (ECF No. 23). The Court dismissed with prejudice Grounds 3 and 4(b) of the second amended petition as not cognizable. The Court also found that Ground 1 and Ground 4(a) of the second amended petition are unexhausted. On July 18, 2014, petitioner filed a declaration in which he abandoned the unexhausted claims of the second amended petition and stated his wish to proceed on the exhausted grounds. (ECF No. 24). On August 11, 2014, respondents filed an answer to the remaining grounds of the second amended petition, which are Grounds 2 and 5. (ECF No. 25). Petitioner filed a reply on August 29, 2014. (ECF No. 27).

**II.  Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The formidable standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) and (e) on the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011).

**III. Discussion**

    **A. Ground 2**

Petitioner claims that his constitutional rights were violated when trial counsel failed to seek a continuance in order to review the recorded interview of witness Shawn Clay and a diagram drawn by Clay. (ECF No. 8, at pp. 9-10). Petitioner presented this claim in his state post-conviction petition and supplemental brief. (Exhibit 62, at p. 5; Exhibit 74, at pp. 8-11). The Nevada Supreme Court rejected petitioner's argument, as follows:

> First, Satterfield argues that the district court erred by denying his claim that counsel was ineffective for failing to seek a continuance so he could review and examine eyewitness Shawn Clay's recorded statement and obtain diagrams that Clay drew. The district court found credible counsel's testimony at the evidentiary hearing that he did not believe a continuance would have been successful as he had ample time to review the recording, and regardless, he did not want to cast doubt upon the version of events Clay had previously given by impeaching him with other statements because that version was helpful to the defense. In addition, the multiple evidentiary hearings related to Clay's diagrams revealed that the diagrams were not exculpatory and could have merely buttressed counsel's cross-examination. Because Satterfield failed to demonstrate that the results of the proceeding would have been different had counsel sought a continuance or obtained the drawings, we conclude that the district court did not err by denying these claims.

(Exhibit 109, at p. 2).

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) counsel's performance was unreasonably deficient, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).

To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct. 1411, 1413 (2009)). In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'" 563 U.S. at 190 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Id*. at 185. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under

prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

The record reflects that on July 24, 2007, the day after jury selection had concluded and just prior to the State's first witness, Satterfield's trial counsel complained that he only recently had been provided with an audio recording of an interview of State's witness Shawn Clay. (Exhibit 29A, at pp. 3-5). Counsel complained that he had not had sufficient time to review the recording and that the recording included a 27-minute break during which Clay had drawn some diagrams related to his statement which had not been provided to the defense. (*Id.*). The prosecutor concurred with defense counsel's description of the situation, explaining that he had not been aware that there was an audio recording of Shawn Clay until very recently. (*Id.*, at pp. 5-6). The prosecutor explained that he had only been aware of the written statement in the arrest report, and that the report had been provided to the defense very early in the proceedings. (*Id.*, at p. 6). The court asked whether the audio recording was inconsistent with the report, and defense counsel did not identify any inconsistencies but stated that the audio recording was important because it was more specific than the paraphrasing in the written report. (*Id.*, at pp. 6-7). The trial court informed defense counsel that it denied the request to preclude reference to the recording, but denied it without prejudice, with the idea that the court would wait to hear Clay's testimony at trial before considering the issue. (*See Id.*, at p. 7).

Clay testified at trial that morning. (Exhibit 29A, at p. 36). He testified that on March 31, 2006, he was attending a party with various people when Satterfield got into an argument with a 13-year old boy named Edgar. (*Id.*, at pp. 38-41). At some point everyone left and Clay got into a vehicle with five other people, including Satterfield, to go to the store. (*Id.*, at pp. 41-42). As they were driving to the store, they saw Edgar. (*Id.*, at p. 43). Someone yelled to turn the car around, and they turned down the street where Edgar was walking, and everyone got out of the car. (*Id.*). Satterfield walked up to Edgar and swung at him; Edgar looked like he was going to fight back, but instead turned around and ran the other direction. (*Id.*, at pp. 45-46). Satterfield ran back towards the car and said, "Give me the gun" to a person named Rondell, whom Clay knew to have a gun. (*Id.*, at pp. 46-47). Clay saw Satterfield extend his hand and Rondell handed him something. (*Id.*,

at pp. 47-48). Satterfield then came and jumped back in the car. (*Id.*, at p. 48). When they returned to Satterfield's step-sister Jamaka's apartment later that night, Clay heard Satterfield tell Jamaka that he had shot at somebody. (*Id.*, at pp. 48-49). A few days later, Clay again heard Satterfield telling someone that he had shot at somebody. (*Id.*, at p. 50; Exhibit 29B, at p. 51).

During his direct examination, Clay testified that he had been reluctant to speak to the police, but that his mom had forced him to come down and give a statement about 19 days after the incident. (Exhibit 29A, at pp. 37-38; Exhibit 29B, at p. 51). On cross-examination, defense counsel briefly questioned Clay about his statement and spent some time discussing the location of the six passengers in the vehicle during the incident. (Exhibit 29B at pp. 52-56).

During post-conviction proceedings, Satterfield raised a claim that his counsel had been ineffective for failing to request a continuance in order to review the audio recording of Clay's statement and the seating diagrams that he drew. (Exhibit 62, at p. 5; Exhibit 74, at pp. 8-11). The state district court held an evidentiary hearing on Satterfield's claim of ineffective assistance of counsel. (Exhibit 78). At the evidentiary hearing, the trial court heard the testimony of Satterfield's trial counsel, Martin Hart. (Exhibit 78A, at pp. 4-5). Hart related the circumstances at trial (*id.*, at pp. 10-11), and testified that he could have asked for a continuance, but did not think it had any chance of being granted. (*Id.*, at pp. 14-15). When asked how he felt about having to cross-examine Clay without all the information, Hart responded that he had the information, he just would have preferred having written transcripts rather than an audio recording. (*Id.*, at pp. 15-16). Hart testified that he never received Clay's diagrams of the seating arrangements in the vehicle, and did not believe that the prosecution ever had them either. (*Id.*, at p. 17).

On cross-examination, Hart testified that he had no reason to impeach Clay's testimony, and that Clay's testimony "kind of help[ed] me I thought." (Exhibit 78A, at p. 29). Hart also testified that Satterfield had told him that Clay was not going to be available for trial. (*Id.*). Hart stated that he had not requested a continuance before trial because he did not want to give the State an opportunity to locate Clay and have him testify. (*Id.*, at pp. 29-30). Petitioner testified that he did not find out that Clay had been located until just prior to trial. (*Id.*, at pp. 30-33). Hart

acknowledged that he could have recalled Clay as a witness later during the trial if he had desired to do so. (*Id.*, at pp. 37-38).

The court then posed some questions. In response, Hart testified that he had reviewed the entire audio recording of Clay's interview before trial started. (Exhibit 78A, at pp. 40-42). Hart also stated that there were no significant differences between the audio recording of Clay's interview and the summary of that interview in the police report. (*Id.*, at pp. 44-45). The court asked Hart if there was anything that would have benefitted him had he obtained a continuance. (*Id.*, at p. 46). Hart responded that there was "nothing I can think of with any specificity whatsoever." (*Id.*).

Approximately one month later, the court obtained the diagrams drawn by Clay and reviewed them at a second evidentiary hearing. (Exhibit 81). Following consideration of the evidence presented at the hearings, the state district court found that trial counsel had not been ineffective. (Exhibit 84, at pp. 3-4). Based on the facts above, the Nevada Supreme Court's decision to affirm the denial of Satterfield's claim was reasonable.

Satterfield failed to show that his trial counsel's performance was deficient. Counsel made a strategic decision not to seek a continuance before trial because he did not want to give the State more time to locate Clay. (Exhibit 78A, at pp. 29-30). Pursuant to *Strickland*, "strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengable." 466 U.S. at 690. After counsel became aware on the second day of trial that Clay would be present, counsel's decision not to request a continuance was still reasonable because counsel had already reviewed the entirety of the audio recording of Clay's statement and was adequately prepared to cross-examine him. (*See* Exhibit 78A, at pp. 40-46).

Even if counsel's performance was deficient, petitioner cannot show prejudice. Even if counsel had moved for a continuance, it is clear from the trial court's related rulings that the motion would have been denied. (*See* Exhibit 29A, at p. 7). Satterfield conceded that he was present at the scene of the crime and there were at least five other people in the vehicle with him who all identified Satterfield as the shooter. (*See* Exhibit 78A, at pp. 38-39; Exhibit 78B, at pp. 63-64).

Further cross-examination of Clay on the subject of minor inconsistencies in his statements would not have had a reasonable likelihood of changing the result of trial.

The state courts' factual findings, as outlined above, are presumed correct. 28 U.S.C. § 2254(e)(1); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). Petitioner has failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced under *Strickland*. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies habeas relief as to Ground 2 of the federal habeas petition.

**B. Ground 5**

Petitioner claims that his due process rights were violated by the cumulative effect of errors at trial. (ECF No. 8, at pp. 18-19). Petitioner argues that relief is warranted based on the cumulative effect of three errors previously alleged in the federal petition: (1) the claim presented in Ground 4(b) that the trial court erred by refusing to give a jury instruction on accomplice testimony; (2) the claim presented in Ground 2 that counsel was ineffective for failing to request a continuance to review the diagrams of Shawn Clay; and (3) the claim presented in Ground 3 that the trial court erred by admitting accomplice testimony in violation of NRS 175.291.

The claim of cumulative error in Ground 5 of the federal petition is a combination of two different cumulative error claims petitioner presented in the state courts. Petitioner first raised a claim of cumulative error on direct appeal. (Exhibit 52, at pp. 25-26). The Nevada Supreme Court summarily denied the claim in a footnote, concluding that there were no errors to consider cumulatively. (Exhibit 56, at p. 5, n.4). Petitioner also raised a claim of ineffective assistance of counsel based on cumulative error during his state habeas proceedings. (Exhibit 74, at p. 14-15). The Nevada Supreme Court affirmed the state district court's denial of that claim by stating that

1  "[b]ecause Satterfield has demonstrated only one possible error,[2] we conclude that he is not entitled
2  to relief on this claim." (Exhibit 109, at p. 5).
3       The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1); *see Taylor*
4  *v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). Petitioner has failed to meet his burden of proving
5  that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of,
6  clearly established federal law, as determined by the United States Supreme Court, or that the ruling
7  was based on an unreasonable determination of the facts in light of the evidence presented in the
8  state court proceeding.
9       Moreover, the United States Supreme Court has not clearly established that claims of
10 ineffective assistance of counsel can be considered cumulatively. Even if such claims can be
11 considered cumulatively, the Ninth Circuit has limited habeas relief under a cumulative error theory
12 to situations were there is a "unique symmetry of otherwise harmless errors, such that they amplify
13 each other in relation to a key contested issue in the case." *Ybarra v. McDaniel*, 656 F.3d 984, 1001
14 (9th Cir. 2011). Petitioner fails to meet this standard because Ground 5 includes only one alleged
15 constitutional violation. The two claims of trial error that were presented in Grounds 3 and 4(b)
16 were previously dismissed from this action because they were based solely on state law. (ECF No.
17 23, at p. 6). The Nevada Supreme Court, which is the final authority on matters of state law,
18 decided on direct appeal that petitioner failed to show any trial court error. (Exhibit 56, at p. 5, n.4).
19 Because these two grounds fail to set forth a valid constitutional claim for relief, and the Nevada
20 Supreme Court has determined that the trial court made no errors of state law – not even harmless
21 errors – petitioner cannot show a unique symmetry of errors in relation to a key issue in the case.
22 *See Ybarra*, 656 F.3d at 1001. The claim of cumulative error in Ground 5 does not include any
23 cognizable claims for habeas relief other than the claim already presented in Ground 2, and is
24 therefore redundant with Ground 2. Petitioner fails to show that the Nevada Supreme Court's

---

[2] The sole possible error was counsel's failure to request a limiting jury instruction immediately prior to the jury learning that Satterfield was a gang member. (Exhibit 109, at p. 3). The Nevada Supreme Court had previously determined that this error was harmless. (*Id.*).

resolution of any of his claims of cumulative error was unreasonable. The Court denies habeas relief as to Ground 5 of the federal petition.

**IV.  Certificate of Appealability**

District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* In this case, no reasonable jurist would find this court's denial of the petition debatable or wrong. The Court therefore denies petitioner a certificate of appealability.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this __20__ day of September, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court